## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON, )
           )    DIVISION ONE
        Respondent, )
           )    No. 72726-5-I
        v. )
           )    PUBLISHED OPINION
DANIEL ROSS GILES, )
           )
        Appellant. )    FILED: November 28, 2016
_____ )

DWYER, J. — Danny Giles appeals from the judgment entered on a jury's

verdict finding him guilty of murder in the first degree, committed while armed

with a deadly weapon. He asserts that, by excluding evidence of three other

suspects who purportedly committed the murder, the trial court deprived him of

his right to present a defense. He also asserts that, by contravening a ruling in

limine, a witness's testimony denied him his right to a fair trial, notwithstanding

that the trial court struck the offending testimony from the record and issued a

curative instruction, approved by his counsel, and notwithstanding that his

counsel requested no other remedy. Finding no error, we affirm.

I

Patti Berry, a nude dancer at a nightclub, went missing after leaving work

sometime after 1:30 a.m. on July 31, 1995. Her car was found the next day,

parked between two moving vans at a nearby car wash. There was a significant

amount of blood inside of the car. A search of the surrounding area uncovered a blood-stained pair of jeans and a handbag, both appearing to belong to Berry. The police processed her car, removing, for the purpose of forensic testing, its steering wheel, driver's seat headrest, and a piece of the front passenger seat's fabric containing a bloody handprint.

Nine days after she went missing, Berry's body was found in a wooded area a few miles from the car wash. An autopsy of the body revealed that the cause of her death was blood loss from 16 to 18 stab wounds. A forensic pathologist's analysis concluded that the rate of decomposition of her body was consistent with death occurring on July 31.

The police investigation identified several suspects, none of whom were Danny Giles. The police made no arrests. This remained so for many years.

Periodically, over the next many years, investigators conducted in-depth deoxyribonucleic acid (DNA) testing of the evidence seized. The testing identified a partial match between the DNA of Danny Giles and the DNA samples taken from Berry's jeans and handbag and her car's steering wheel and driver's seat headrest.[1] These matches indicated that Giles could not be excluded as a suspect and, thus, were consistent with a theory that Giles had murdered Berry.

The DNA profile matches led the police to investigate Giles, uncovering additional evidence that he may have been the killer: he had visited the nightclub where Berry worked on previous occasions, he had poor opinions of sex workers,

---

[1] The testing excluded Giles as a contributor to both male DNA found on fingernail clippings taken during Berry's autopsy and male DNA found in the bloody handprint on the passenger seat of Berry's car.

he sometimes carried a knife, and he lived and worked in the area, frequenting a bar near the car wash where Berry's car was discovered and working for a landscaper near the wooded lot where Berry's body was found.

During a police interview, Giles initially denied knowing Berry. However, after being confronted with the DNA profile partial matches, he said that it was possible that he had engaged in intercourse with her but could not explain why his DNA would be in Berry's car. In addition, in 2012, a witness, Todd Horton, came forth to claim that in the early morning in question he had seen a man who looked like Giles washing out a car's floor mats, backseat, and trunk, and that the substance being washed out looked murky, like blood.

Giles was charged with murder in the first degree, committed while armed with a deadly weapon, arising from the death of Patti Berry. Based on a separate investigation, Giles was also charged with murder in the first degree arising from the death of Tracey Brazzel. Prior to trial, Giles moved to sever the murder charges for trial. The trial court granted Giles' motion.

As part of his defense, Giles sought to present evidence that someone other than him had killed Berry.[2] In so doing, Giles identified 11 other individuals and sought permission to present to the jury the "other suspect" evidence for each individual. The trial court held hearings over the course of five days regarding the admissibility of this evidence. At the first such hearing, evidence pertaining to five of the individuals identified by Giles was excluded by the trial court when Giles' counsel admitted that he did not have sufficient evidence to

---

[2] For ease of reference, we refer to such evidence as "other suspect" evidence.

warrant presenting any of those individuals to the jury as the true killer. Thereafter, the trial court permitted Giles to introduce evidence of one individual, Bryan Petitclerc, as the perpetrator and excluded evidence pertaining to the remaining five.

At trial, on the 12th day of the State's case in chief, Giles' attorneys filed a motion in limine regarding the upcoming testimony of Kristopher Kern, the State's expert witness. The State indicated that Kern would testify that he had familiarized himself with the facts of the case and had reviewed the DNA analyses regarding Giles' DNA found inside Berry's car and on Berry's possessions. Based on his expertise and his familiarity with the facts, the State planned to have Kern testify regarding conclusions he had drawn as to the likelihood that Giles had been inside Berry's car and touched those of her possessions found nearby. Giles' motion requested that Kern be limited to testifying that the DNA evidence was "consistent with" the postulation that Giles touched Berry's car and her belongings, not that it was "likely" that Giles did so. The court granted the motion, stating, "I guess I'm a little bit bothered by the term likely. [Kern] could say his opinion, based on everything he reviewed, is this, but I don't think he can quantify it as likely, but you can ask him his opinion, based on what he's reviewed."

During his testimony, however, Kern, in response to the prosecutor's questions, testified that the DNA evidence established that it was "likely" that Giles was in Berry's car and that it was "likely" that Giles touched some of her belongings. Before the jury, defense counsel objected to each statement, citing

a lack of foundation but not referencing the trial court's prior ruling. The trial court overruled each objection.

Immediately after Kern's second answer, a recess was taken. At this time, defense counsel informed the court that her objections had been based on the trial court's previous ruling. The trial court left the bench to review its notes. Upon returning to the bench, the trial court ruled that Kern's testimony violated its prior ruling. Defense counsel requested that a curative instruction be given to the jury. Defense counsel deferred to the trial court to draft the curative instruction and approved of the curative instruction composed by the court. The trial court inquired as to whether any other matters remained for decision. Defense counsel requested nothing further from the court.

The jury was brought into the courtroom. The trial court ordered the offending testimony stricken from the record. The curative instruction was then read to the jury.

After a 15-day trial, the jury found Giles guilty of Berry's murder.

## II

## A

Over the course of nearly a century and an intervening United States Supreme Court decision, Washington's "other suspect" evidence rule—applicable to proffered evidence that a specific person other than the defendant committed the charged crime—has developed from a broad common law rule to a specific and focused application of well established principles of materiality and probative value.

In <u>State v. Downs</u>, 168 Wash. 664, 13 P.2d 1 (1932), our Supreme Court acknowledged the common law rule. The issue in <u>Downs</u> was whether the trial court improperly excluded evidence that a specific person other than Downs or his codefendant committed the burglary at issue. The defendants sought to present evidence that "Madison Jimmy," a well known safe burglar, was in town on the night in question and planned to argue to the jury that he, not the defendants, stole from the safe. <u>Downs</u>, 168 Wash. at 666. Upon the State's objection, the trial court excluded the evidence. <u>Downs</u>, 168 Wash. at 666.

Our Supreme Court found no error in the trial court's ruling. Noting that the defendants had failed to adduce evidence pointing to "Madison Jimmy" as the burglar, the court cited to the "general rule" of other jurisdictions, requiring that "[b]efore such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party." <u>Downs</u>, 168 Wash. at 667 (citing <u>State v. Caviness</u>, 40 Idaho 500, 235 P. 890 (1925)). The court concluded that "[t]he fact that the so-called 'Madison Jimmy' was present in Seattle on the night of the burglary and may have had the opportunity to commit it, does not amount to even a justifiable suspicion that he did so." <u>Downs</u>, 168 Wash. at 667-68. The proffered evidence, the court observed, "would not create a reasonable inference as to the innocence of appellants." <u>Downs</u>, 168 Wash. at 668.

Nearly 70 years later, the United States Supreme Court examined whether a recent modification to South Carolina's common law "other suspect" evidence rule deprived a defendant of his right to present a defense. <u>Holmes v. South</u>

Carolina, 547 U.S. 319, 327, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006).[3] The

modified South Carolina rule excluded more evidence than did the common law

rule, permitting a trial court to exclude a defendant's "other suspect" evidence

when there was sufficiently strong evidence of the defendant's guilt.

> Under this rule, the trial judge does not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt. Instead, the critical inquiry concerns the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues.

Holmes, 547 U.S. at 329.

The Supreme Court noted the manner in which the common law "other

suspect" rule was consistent with constitutional mandates.

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. See, e.g., Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" Crane[ v. Kentucky], 476 U.S.[ 683,] 689–690[, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)] (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679[, 106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986); ellipsis and brackets in original). See also Montana v. Egelhoff, 518 U.S. 37, 42[, 116 S. Ct. 2013, 135 L. Ed. 2d 361] (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

---

[3] South Carolina's prior "widely accepted" common law rule was the same rule discussed in Downs and followed in subsequent Washington cases. Holmes, 547 U.S. at 327 n.* (citing State v. Thomas, 150 Wn.2d 821, 856-58, 83 P.3d 970 (2004)); see Downs, 168 Wash. at 667.

> *A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged.* See, *e.g.*, 41 C.J.S., Homicide § 216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)).

Holmes, 547 U.S. at 326-27 (emphasis added).

The Supreme Court held that the South Carolina rule was unconstitutionally arbitrary because it assumed that the prosecution's evidence should be credited rather than focusing on whether the proffered evidence, if credited, might tend to support a reasonable doubt as to the defendant's guilt without being repetitive, harassing, or confusing. Thus, the Court ruled, the application at trial of the South Carolina rule violated Holmes' "right to have '"a meaningful opportunity to present a complete defense."'" Holmes, 547 U.S. at 331 (quoting Crane, 476 U.S. at 690) (quoting California v. Trombetta, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984)).

Our Supreme Court recently explained that, since Downs and in light of Holmes, Washington has developed a more "restrained interpretation" of its "other suspect" evidence test. State v. Franklin, 180 Wn.2d 371, 381, 325 P.3d 159 (2014). At issue therein was whether Washington's "other suspect" case law

barred Franklin from presenting circumstantial evidence pointing to another suspect who had the requisite motive, ability, opportunity, and character to have been the perpetrator. Franklin, 180 Wn.2d at 379-81. The trial court had interpreted Downs and subsequent cases as requiring—in order to admit the proffered evidence—specific facts showing that the other suspect *actually committed the crime*. Franklin, 180 Wn.2d at 379-81. The trial court excluded the evidence. Franklin, 180 Wn.2d at 379.

Our Supreme Court reversed the trial court's decision, explaining that it had "never adopted a per se rule against admitting circumstantial evidence of another person's motive, ability, or opportunity. Instead, our cases hold that if there is an adequate nexus between the alleged other suspect and the crime, such evidence should be admitted." Franklin, 180 Wn.2d at 373.

As in Holmes, our Supreme Court explained that "other suspect" case law simply evidences specific applications of well established evidentiary principles. Referencing its "other suspect" jurisprudence as a limitation on collateral evidence, the Franklin court continued:

> In effect, this limitation on collateral evidence was similar to the requirement that evidence must have sufficient "probative value" to be relevant and admissible under ER 403. Evidence establishing nothing more than suspicion that another person might have committed the crime was inadmissible because its probative value was greatly outweighed by its burden on the judicial system. Other suspect evidence that establishes only such suspicion is inadmissible.
> In contrast, we held in State v. Maupin that eyewitness testimony that a kidnapping victim was seen after the kidnapping with a person other than the defendant was both relevant and sufficiently probative to pass the Downs test. 128 Wn.2d 918, 928, 913 P.2d 808 (1996). Such evidence links the other suspect to the specific crime charged, either as the true perpetrator or as an

- 9 -

accomplice or associate of the defendant. Evidence of this sort differs from evidence of motive, ability, opportunity, or character in that the proffered evidence *alone* is sufficient under the circumstances to establish the necessary connection. However, neither Maupin nor the earlier cases stand for the proposition that motive, ability, opportunity, and/or character evidence together can never establish such a connection. The Downs test in essence has not changed: some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the charged crime.

The trial court was thus incorrect to suggest that direct evidence rather than circumstantial evidence is required under our cases. The standard for relevance of other suspect evidence is whether there is evidence "'tending to connect'" someone other than the defendant with the crime. Downs, 168 Wash. at 667 (quoting 16 C.J. *Criminal Law* § 1085, at 560 (1918)), *quoted in* Maupin, 128 Wn.2d at 925. Further, other jurisdictions have pointed out that this inquiry, properly conducted, "focuse[s] upon whether the evidence offered tends to create a reasonable doubt as to the *defendant's* guilt, not whether it establishes the guilt of the *third party* beyond a reasonable doubt." Smithart v. State, 988 P.2d 583, 588 & n.21 (Alaska 1999).

180 Wn.2d at 380-81.

Thus, the threshold analysis for "other suspect" evidence involves a straightforward, but focused, relevance inquiry, reviewing the evidence's materiality and probative value for "whether the evidence has a logical connection to the crime." Franklin, 180 Wn.2d at 381-82 (citing Holmes, 547 U.S. at 330).

B

Trial court decisions on the admission of evidence are reviewed for abuse of discretion. State v. Perez-Valdez, 172 Wn.2d 808, 814, 265 P.3d 853 (2011). "Such abuse occurs when, considering the purposes of the trial court's discretion, it is exercised on untenable grounds or for untenable reasons." State v. Clark, 78 Wn. App. 471, 477, 898 P.2d 854 (1995).

The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant a meaningful opportunity to present a defense.[4] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). This right, however, is not absolute. It may, "in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process," Chambers v. Mississippi, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), including the exclusion of evidence considered irrelevant or otherwise inadmissible. State v. Strizheus, 163 Wn. App. 820, 830, 262 P.3d 100 (2011); accord Jones, 168 Wn.2d at 720 ("Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence."); State v. Aguirre, 168 Wn.2d 350, 363, 229 P.3d 669 (2010) ("[T]he scope of that right does not extend to the introduction of otherwise inadmissible evidence.").

As with all evidence, the proponent bears the burden of establishing the admissibility of "other suspect" evidence. State v. Starbuck, 189 Wn. App. 740, 752, 355 P.3d 1167 (2015), review denied, 185 Wn.2d 1008 (2016). Because the premise underlying the introduction of "other suspect" evidence is to show that someone other than the defendant committed the charged crime, the standard for admission is whether the proffered evidence tends to indicate a reasonable doubt as to the defendant's guilt. Franklin, 180 Wn.2d at 381.

---

[4] "'The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.'" Crane, 476 U.S. at 690 (quoting Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

Evidence is relevant when it is both material—the fact to be proved "'is of consequence in the context of the other facts and the applicable substantive law'"—and probative—the evidence has a "tendency to prove or disprove a fact." State v. Sargent, 40 Wn. App. 340, 348 n.3, 698 P.2d 598 (1985) (quoting 5 K. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 82, at 168 (2d ed.1982)).

C

On appeal, Giles asserts that the trial court abused its discretion in excluding evidence pointing to Frank Colacurcio Jr., Michael Beatie, and James Leslie as the actual slayer of Patti Berry. We discuss the trial court's rulings as to each of these "other suspects" in turn.[5]

1

Giles first asserts that the evidence he sought to introduce regarding Frank Colacurcio Jr. tended to establish that Colacurcio was the murderer and thus the trial court abused its discretion by ruling the evidence inadmissible. We disagree.

In his pretrial motion, Giles set forth the evidence that he would present, if allowed, that supported identifying Colacurcio as the true killer: (1) Colacurcio was a co-owner of the nightclub at which Berry worked, (2) Berry once said that

---

[5] Giles, in his appellate briefing, omitted that the trial court allowed him to introduce evidence pointing to Bryan Petitclerc as the actual killer. Before trial, Giles offered the following proof in support of introducing evidence of Petitclerc as the true killer: (1) In 1999, contrary to his testimony in 2012, witness Horton had identified Petitclerc in a photomontage with "99 percent confidence" as the individual he saw at the car wash on the night in question, (2) the composite drawing from 1999 that was generated with Horton's input resembled Petitclerc, and (3) Petitclerc lived in the area during the time in question.

The trial court permitted Giles to introduce evidence pointing to Petitclerc as the true killer. Giles' counsel availed themselves of this opportunity. The evidence did not, apparently, have its desired effect on the jurors.

Colacurcio was a "mafia type," (3) Berry owed Colacurcio several thousand dollars for a loan that financed her breast augmentation surgery and for unpaid rental fees (amounts charged to women for the right to dance at his clubs), (4) Berry was a sex worker who had been blackmailing her customers, including one of Colacurcio's "associates," (5) Berry's mother claimed that Berry had once slapped Colacurcio after he touched her rear end, (6) Colacurcio had sent Berry to work at a strip club in Texas earlier that month and, while in Texas, Berry stated that she was afraid of going back to Washington, (7) a black car of the same color and model as a car owned by Colacurcio was seen driving away from the nightclub around the same time that Berry was last seen and in the same direction as Berry had been seen driving, (8) the nightclub's surveillance tapes requested by the police were not turned over to the police in a timely fashion, and (9) the nightclub's surveillance tape recorded on the night that Berry disappeared—unlike the videotapes for different nights—was blank.

The trial court excluded the proposed evidence regarding Colacurcio, inviting defense counsel to seek to obtain additional evidence concerning Colacurcio's car and its possible connection to the crime.

Giles later filed a supplemental motion offering proof that Colacurcio had been present at the nightclub on the night in question.

Nevertheless, the trial court adhered to its ruling, excluding evidence pointing to Colacurcio as the murderer. The trial court reasoned that Berry's financial debt to Colacurcio weighed against him having a motive to kill her, stating, "I mean, if she owes him money, he's probably going to want his money

back." The trial court further reasoned that the evidence of blackmail was insufficient because it did not tend to show that Berry was blackmailing Colacurcio himself. Furthermore, the trial court explained that, with regard to Berry's reluctance to return to Washington, no proof was offered that Berry had a specific fear of Colacurcio.

The trial court's analysis was tenable. While the evidence tied Colacurcio to Berry, it did not tie him to her killing. Thus, the trial court properly ruled that the proposed testimony seeking to identify Colacurcio as the true killer was not of a type that would cause to exist a reasonable doubt as to Giles' guilt. Hence, the trial court did not abuse its discretion by denying Giles' request to identify Colacurcio to the jury as Berry's true killer.[6]

---

[6] Giles also sought to introduce evidence that Colacurcio had threatened to kill Berry and that Colacurcio was behind her murder. Giles derived this information from an investigating officer who was told of it by another police officer, who, in turn, received the information from an anonymous tip. The State argued that the evidence was hearsay and lacked a basis for establishing personal knowledge thereof. The trial judge did not specifically address this evidence in its ruling when it excluded all of Giles' proffered evidence pointing to Colacurcio as the actual killer.

When the motion before the trial court is one to exclude evidence, an offer of proof by the proponent is required by rule.

Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and

. . .

(2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

ER 103(a).

Such an offer serves three purposes.
[I]t informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review.

State v. Ray, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991). An offer of proof is unnecessary only when "the substance of the excluded evidence is apparent from the record." Ray, 116 Wn.2d at 539.

When we review a trial court decision to exclude evidence, we evaluate the court's analysis of the proof offered in light of general evidentiary admissibility principles. Thus, we ordinarily assume that the trial court is making its admissibility evaluation in response to only the ground stated, ER 103(a), that matters discussed by counsel are within the contemplation of the

2

Giles next asserts that his proffer of circumstantial evidence concerning Deputy Sheriff Michael Beatie—his frequent association with the crime scenes and his bad character—was sufficient to connect Beatie to the murder and, as a result, the trial court erred in excluding the evidence. We disagree.

In his pretrial motion in support of the introduction of "other suspect" evidence, Giles made the following offer of proof concerning his request to identify Beatie to the jury as the true killer: (1) Beatie worked and lived in the area, (2) Beatie was under investigation for "abuse of power and taking advantage of women" and the letter terminating his employment with the Sheriff's Office indicated that he had maintained a pattern of abusing his power for his social and sexual needs, (3) Beatie was not on duty the night of Berry's disappearance, (4) Beatie was the first officer on the scene when Berry's car was found, (5) two officers noted in their reports that Beatie made suspicious comments about the murder investigation, (6) the day after Berry's vehicle was found, Beatie told Berry's sister that, while looking for Berry's body, he had

judge, State v. Johnson, 48 Wn. App. 531, 537, 740 P.2d 337 (1987), that the judge "considered all pertinent arguments made by counsel," Johnson, 48 Wn. App at 538, and that the judge ruled in relation to the circumstances of the case as it then existed. Johnson, 48 Wn. App at 537. However, we also remain aware that a trial judge may deem excluded inadmissible evidence even in the absence of an objection, In re Estate of Hayes, 185 Wn. App. 567, 591-92, 342 P.3d 1161 (2015), and that, generally, a ruling properly excluding evidence will be upheld if the record reveals a sound basis for that result, even if the court did not articulate that basis (or any basis) for its ruling. See State v. Markle, 118 Wn.2d 424, 438, 823 P.2d 1101 (1992); State v. Jones, 71 Wn. App. 798, 824, 863 P.2d 85 (1993); State v. Rivas, 49 Wn. App. 677, 688, 746 P.2d 312 (1987).

Here, the challenged evidence was hearsay upon hearsay with no showing of any personal knowledge of any identifiable person. As such, it was plainly inadmissible for reasons apart from the "other suspect" analysis. Accordingly, the trial judge properly gave this proffered evidence no credit in evaluating the merits of Giles' "other suspect" request.

received scratches from falling down an embankment into some blackberry bushes, (7) when Berry's body was found, Beatie went to the body recovery site, (8) Berry's body was found in blackberry bushes, and (9) Beatie called Berry's mother to offer condolences.

At the hearing, the trial court expressed interest in the scratches that Beatie had received and offered that, if Giles could establish that Beatie had not been officially responsible for searching for Berry's body, Giles could introduce evidence that Beatie was a suspect in the murder.

Three weeks later, still prior to trial, Giles offered additional evidence pointing to Beatie as the true killer: (1) Beatie's knowledge and experience as a sheriff's deputy would enable him to commit and cover-up a murder, (2) at the car recovery site, Beatie placed one foot on the fender of the Berry's car, pressed his foot down on the fender to gauge the response of the car's suspension, and remarked that Berry was not in the trunk, (3) no embankment existed at the site where Beatie claimed he had fallen while searching for Berry's body, (4) a police report indicated that another officer, not Beatie, was searching for Berry's body in blackberry bushes, (5) Beatie commented that Berry's body would be found in the woods, and Berry's body was later found in a wooded lot, (6) Berry's sister and mother both said that Beatie told them that he knew Berry, (7) Berry may have been blackmailing Beatie because Beatie was purportedly the type of person who would be susceptible to blackmail attempts, and (8) Beatie was viewed as a viable suspect long into the State's investigation because, in 2007, the State compared Beatie's DNA with the steering wheel DNA sample.

At a hearing a week later, Giles asserted that this additional evidence justified the introduction of evidence pointing to Beatie as the actual killer because it contradicted Beatie's statements about the circumstances under which he was scratched by blackberry bushes. In response, the State pointed to a report indicating that Beatie was responsible for searching for the body at the time in question. After asking if Giles' counsel had gathered any other evidence, the court stated,

> So I'm going to stick with my ruling in my previous ruling. I'm not going to find that Mr. Beatie can be named as an other suspect. That specifically indicates in the report that he was responsible for searching for the body. There is reference in the report to him checking the area, and it did reference there were blackberry bushes. Frankly, the fact that he didn't know he was scratched by them is insignificant to me, in relation to that particular issue. So I'm not going to permit him to be called as an other suspect.

As recognized by the trial court, the evidence sought to be introduced concerning Beatie lacked relevance. Although the circumstantial evidence proffered might have tended to create a certain suspicion that Beatie may have been the true killer, other facts in the record undercut this connection. See State v. Wade, 186 Wn. App. 749, 767-68, 346 P.3d 838, review denied, 184 Wn.2d 1004 (2015) (video surveillance recording undercut "other suspect" evidence's relevance). As noted by the trial court, because Beatie was a sheriff's deputy who was responsible for investigating the murder, the proffered evidence showing his interest in the criminal investigation failed to logically connect Beatie to the crime in a nefarious way. Similarly, because the remaining proffered evidence seeking to identify Beatie as the true killer required the pyramiding of speculation upon inferences in order to connect him to Berry's murder, the

evidence lacked probative value, failing to have a tendency to establish that he murdered Berry. The evidence thus did not have a tendency to support a reasonable doubt as to whether Giles committed the crime. Accordingly, the trial court did not abuse its discretion by excluding the evidence.[7]

3

Giles' next contention is that the trial court should have admitted "other suspect" evidence pointing to James Leslie as the true killer and that it abused its discretion by not so ruling. We disagree.

In his initial "other suspect" motion, Giles made the following offer of proof in support of introducing evidence pointing to Leslie as Berry's murderer: (1) Leslie lived near the nightclub and was at the nightclub the night that Berry disappeared, (2) Leslie sat with a known drug dealer during Berry's last shift, (3)

---

[7] In his appellate briefing, Giles also cites to certain "other suspect" evidence regarding Beatie, without indicating that this proffered evidence was not before the trial court until Giles moved for a new trial following the jury's verdict—long after the trial court's "other suspect" rulings. We review the trial court's evidentiary decisions based on the evidence before the court at the time of its ruling.

Giles' appellate briefing does not mention the motion for a new trial and the evidence tendered in support thereof. As a corollary of this failure, Giles does not present a separate argument regarding the grounds for a new trial request, address the applicable standard of review, or cite to any authority demonstrating that he was entitled to a new trial.

Even so, were we to entertain an assertion that the trial court erred by denying Giles' motion, we would conclude that such an assertion has no merit. Giles' motion for a new trial was premised on information gleaned from Beatie's testimony during a pretrial hearing, testimony which, Giles claimed, was not supported by other witnesses' subsequent testimony at trial. Giles indicated that, during the pretrial hearing, Beatie, for the first time, testified that he approached Berry's body on the night that her body was found and identified her by a tattoo on her hip that he knew she possessed from a prior conversation with Berry's mother. Giles' motion contrasted this testimony with that of the police officers who testified at trial. The police officers testified to the sanctity of the body site, that only detectives trained in crime scene investigation (which Beatie was not) were allowed near the body, and that those detectives who investigated Berry's body did not approach her body until the morning after her body was found and that they could not identify the tattoo until they were directly above her body.

Nonetheless, because Beatie was responsible for investigating Berry's murder, the motion's supporting circumstantial evidence fails to connect Beatie to the murder, thus rendering the evidence inadmissible. Accordingly, the trial court was unquestionably correct in denying the request for a new trial.

Berry danced for Leslie several times that night, (4) an individual who looked like Leslie was seen carrying a duffel bag near the car recovery site before Berry's car was recovered, (5) Leslie provided conflicting statements to the police after the murder, and (6) Leslie burned his diary when the police asked him to turn it over to them.

At the hearing, the trial court denied Giles' request, questioning how Leslie sitting with a drug dealer and hiring Berry to dance for him tended to prove that Leslie killed Berry, explaining that "there's nothing here that's admissible that lays a sufficient nexus."

As the trial court indicated, the evidence relating Leslie to Berry is merely that Leslie was a patron of the nightclub. The remaining evidence lacks probative value because, without more, it fails to have a tendency to establish that Leslie murdered Berry. Thus, it was not evidence of a type that would give rise to a reason to doubt Giles' guilt of the charged crime. The trial court did not abuse its discretion by excluding the evidence seeking to blame Leslie for the murder.

As to all three of the trial court's determinations, its reasoning was sound. There was no error.

III

Giles next contends, for the first time on appeal, that witness Kern's testimony in violation of the ruling in limine deprived him of his right to a fair trial. This argument is advanced notwithstanding that the trial court struck the offending testimony and issued a curative instruction that was approved by Giles'

counsel and notwithstanding that Giles' counsel requested no other remedy. Because Giles received all of the relief that was requested by his attorney at trial, his present claim is without merit.

Witness Kern twice testified to his opinion that it was "likely" that Giles had been in Berry's car at or around the time of her murder. This testimony violated a prior ruling limiting Kern's testimony to an opinion that the DNA evidence was "consistent with" this conclusion—as opposed to it being "likely." Giles' objections to this evidence were ultimately sustained. Kern's offending testimony was stricken from the record in the presence of the jury. And the jury was given a curative instruction that had been approved of by Giles' attorney. No other remedy was sought by Giles' counsel.

On appeal, Giles contends that—notwithstanding the remedies imposed by the trial judge—a new trial must be awarded. This is another way of saying that the trial judge erred by not declaring a mistrial—even though Giles never requested a mistrial. Giles is wrong.

The testimony at issue was as follows:

> [Prosecutor]: Based upon the blood evidence in the vehicle and the evidence from the body-recovery site, is this scene consistent with Patti being driven to where she was ultimately found, in her own car?
> [Kern]: I think that's a strong possibility.
> [Prosecutor]: You also reviewed the various DNA reports?
> [Kern]: Yes.
> [Prosecutor]: You reviewed the report by Jean Johnston?
> [Kern]: Yes.
> [Prosecutor]: And you reviewed the report by William Stubbs?
> [Kern]: Yes.
> [Prosecutor]: Based on that, is it **likely** that the defendant, Danny Giles, was inside of that car, touching the steering wheel?

- 20 -

[Kern]: At some point --

[Defense Counsel]: **Objection. Foundation**.

[Court]: **Overruled**.

[Kern]: At some point prior to the vehicle being recovered, yes.

[Prosecutor]: You also reviewed the DNA reports from Orchid Cellmark, from Aimee Rogers and Barbara Leal?

[Kern]: Yes.

[Prosecutor]: After review of those reports, do you have an opinion whether it was **likely** that Mr. Giles touched those items,[8] prior to their recovery?

[Defense Counsel]: **Objection. Foundation**. This expert is not qualified to testify as to what Aimee Rogers and Barbara Leal testified to. They can testify to what their reports indicate, not this witness.

[Court]: **Overruled**.

[Kern]: Yes, prior to them being discovered.

(Emphasis added.)

Immediately after this testimony, the court recessed. During the recess, Giles' counsel for the first time alerted the judge that her objections were based on a violation of the court's prior ruling.

[Defense Counsel]: . . . When we had our motions in limine argument regarding Mr. Kern's testimony, you granted defense motion No. 9-E, which specifically was prohibiting Mr. Kern to testify that Danny Giles was likely inside the Honda Prelude, prior to its recovery. You said that, in fact, if you wanted to ask is it consistent with that, that would be okay, but he is not to testify that it's likely. And that's exactly what happened, and that's why I objected, and you overruled me.

Now oriented to the actual basis of the defendant's objection, the trial judge promptly left the bench to review his notes in chambers.

After returning to the bench, the trial judge ruled that Kern's "likelihood" testimony violated the court's prior ruling:

---

[8] The items that Kern referenced were Berry's belongings found near the car recovery site, including her handbag and jeans.

[Court]: . . . I did review the motions in limine, it's been some time since I went through them. Specifically, the motion in limine did ask that this witness be precluded from stating that it was likely that Danny Giles was inside the Honda Prelude, prior to its recovery, and likely that he had contact with some of Ms. Berry's belongings, prior to recovery. That was the motion in limine.

. . . .

I don't find that the violation was intentional by the State. It is a violation, though, of the motions in limine.

What I indicated previously was that the question that could be asked was based upon the review and his analysis of the case, if it was consistent, and that was the difference. I said that the question could be phrased in relation to whether it was consistent, not whether it was likely.

At this point it would be my position that I would advise the jurors that they would disregard the opinions that were provided, in relation to whether or not it was likely the defendant either was inside of the car and touched the steering wheel or if it was likely that he touched items, prior to recovery. I don't believe that the difference in the questions is such that any other additional relief is necessary or appropriate.

If the State wants to reopen after I advise the jurors they need to disregard that, to ask the questions consistent with what my ruling was, I'll permit them to do so.

[Prosecutor]: I guess that would be my request then.

[Court]: Ms. Coburn, anything else?

[Defense Counsel]: No.

[Court]: Any other issues we need to address, before we bring back the jurors?

I guess I would like to go over, with the parties, exactly how you want me to advise the jurors, in relation to they have to disregard that testimony, and I'm looking more from the standpoint of the defense suggestion because I understand that part of the issue might be a concern then that we're highlighting it.

I would indicate, though, that these jurors have been excellent, in relation to following the instructions of the Court throughout this proceeding, and I don't anticipate any issues, and they will completely disregard it, as they are required to.

. . . .

[Defense Counsel]: I don't know if I'm being very articulate, but perhaps you could just read out what you plan to instruct, Your Honor.

[Court]: Let me configure it first, and then I'll read it.

(Pause.)

Okay. Here's what I propose. The jurors are instructed to disregard the testimony from Mr. Kern that it is likely Mr. Giles was

inside the car, touching the steering wheel. The jurors are also instructed to disregard the testimony of Mr. Kern based on review of the reports of Barbara Leal and Aimee Rogers, related to his opinion that it was likely Mr. Giles touched the belongings of Patti Berry, prior to their recovery.

[Defense Counsel]: That's fine.

[Court]: Okay. The State?

[Prosecutor]: That's fine. And just so we're clear, my intent then is to ask a question to Mr. Kern, essentially, that based on a review of various reports, is it consistent with the defendant being inside the vehicle? Yes. Consistent with him touching the various belongings prior to recovery? Yes.

[Court]: Yes. That's what I indicated.

[Prosecutor]: Okay.

[Court]: Any other issues, before we bring out the jurors? Let's get the jury.

The court then struck the offending testimony from the record and instructed the jury as proposed. The prosecutor subsequently questioned Kern consistent with the trial court's ruling.

Giles now argues that Kern's testimony using the "likely" language violated his right to a fair trial and requires a new trial, notwithstanding the remedies imposed by the trial court and notwithstanding that Giles did not request a mistrial.

He is wrong. Giles received the remedies he requested. The law presumes that these remedies are effective. State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008) (curative instruction); State v. Swan, 114 Wn.2d 613, 661-64, 790 P.2d 610 (1990) (objection sustained, evidence stricken, curative instruction given). Giles does not demonstrate that any trial court error occurred.

Giles' argument is—at its core—that the trial court erred by not declaring a mistrial, even though Giles did not request a mistrial. This argument ignores that

jeopardy had attached and that Giles had a right to proceed to verdict with the jurors then empaneled.

Had the trial judge declared a mistrial without Giles' assent, the double jeopardy bar might well have prevented his retrial. Giles does not address this concern in his briefing.

It is for this and other reasons that a mistrial should be granted only when nothing that the trial court could have said or done would have remedied the harm done by the trial misconduct. State v. Gilcrist, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). This was not such a case. Indeed, the trial judge imposed appropriate remedial measures.

It is a principle of longstanding that a trial attorney who does not request a remedy forfeits the claim that the trial judge should have imposed that remedy. "'Counsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse, use the claimed misconduct as a life preserver on a motion for a new trial or on appeal.'" State v. Russell, 125 Wn.2d 24, 93, 882 P.2d 747 (1994) (quoting Jones v. Hogan, 56 Wn.2d 23, 27, 351 P.2d 153 (1960)).

To accede to Giles' appellate request would be to put trial judges in untenable positions. We will not take such action.[9]

---

[9] Giles submitted a pro se statement of additional grounds in which he advanced several arguments. None call for appellate relief. Giles first contends that the prosecutor improperly vouched for a witness and conducted an improper closing argument. Applicable authority is to the contrary. State v. Coleman, 155 Wn. App. 951, 957, 231 P.3d 212 (2010); State v. Anderson, 153 Wn. App. 417, 430-31, 220 P.3d 1273 (2009).

Giles also essentially repeats his attorneys' "other suspect" contentions. These assertions were raised and well argued by counsel. No further discussion is warranted. State v. Meneses, 149 Wn. App. 707, 715-16, 205 P.3d 916 (2009), aff'd, 169 Wn.2d 586, 238 P.3d 495 (2010).

Giles next contends that his attorneys' decision not to employ a witness identification expert constituted ineffective assistance of counsel. Because this decision constituted legitimate

Affirmed.

We concur:

---

trial strategy, he fails to establish the first part of the test for ineffective assistance of counsel—that his attorneys' representation was deficient. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Lastly, Giles asserts that the number of errors in the case warrant reversal pursuant to the cumulative error doctrine. Because Giles has not shown error, the cumulative error doctrine does not apply.