IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77180-9-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| EMANUEL DEMELVIN FAIR, aka ANTHONY P. PARKER, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: October 8, 2018 |

BECKER, J. — Emanuel Fair's trial for first degree murder ended in jury deadlock. We granted review to decide whether jurors should have been given an accomplice instruction. We agree with the trial court that the accomplice instruction proposed by the State was not warranted. There was evidence implicating a suspect other than Fair, but no evidence that the two were complicit in the criminal act.

Arpana Jinaga was killed on November 1, 2008, at approximately 8:00 a.m. on a Saturday morning. Her nude body was found two days later in the bedroom of her Redmond apartment. Her body was covered in an oily substance, as were other items in the apartment. Medics determined that Jinaga had been strangled to death. There was evidence of sexual assault. There was

also evidence the apartment had been broken into—it appeared the front door had been forced open.

A primary suspect at first was Cameron Johnson, Jinaga's neighbor. His DNA (deoxyribonucleic acid) was on a bottle of motor oil found in a bag in a dumpster near the crime scene. The motor oil was later determined to be the substance on Jinaga's body. There were two calls made from Johnson's phone to Jinaga's phone around 3:00 a.m. the morning she was killed. There was evidence that Johnson drove to the Canadian border later that day and attempted to cross before being turned back.

In police interviews, Johnson said that he had attended a Halloween party hosted by Jinaga the night before her death. He admitted that he was sexually attracted to Jinaga and wanted to "hook up" with her that night. He claimed that did not happen. He said he went to bed in his own apartment, alone, sometime after midnight. He awoke around 3:00 a.m. to "moaning" originating from Jinaga's apartment. Johnson said that he soon fell back asleep and stayed in bed until around 10:00 a.m. He said he did not remember calling Jinaga in the middle of the night. He could not explain why his DNA was on the bottle of motor oil. When asked about his trip to the Canadian border, Johnson said that he "just wanted to go for a drive." When told that police had found in his car a printout from November 1 showing pawn shop locations, Johnson responded, "I don't remember that at all."

Fair, another guest at the Halloween party (but not a resident of the apartment complex), was identified as a suspect after testing showed that his

2

DNA was on Jinaga's neck. His DNA was also on duct tape found at the crime scene that may have been used as a ligature, and on Jinaga's bathrobe. The bathrobe was discovered in the same bag as the oil bottle marked with Johnson's DNA.

During an interview on August 18, 2009, detectives asked Fair about Johnson. Fair said that he and Johnson met during the party. They talked about a music editing program. Fair said they went to Johnson's car in the parking lot of the apartment complex sometime around midnight and briefly listened to music before returning to the party. Fair did not recall seeing Johnson again. Johnson agreed with Fair's account of the time he and Fair spent together at the party.

Fair said that after the party ended around 1:00 a.m., he returned to a friend's apartment (in the same complex) and went to sleep. Fair's phone records showed various calls to three women between 2:00 and 5:00 a.m. None of those calls were to Jinaga.

Fair and Johnson each denied any involvement in Jinaga's death and denied any knowledge of the other's potential involvement.

The State charged Fair with first degree murder on October 29, 2010. The information alleged that the murder was premeditated and committed during the course of a burglary and rape. A special allegation of sexual motivation was also included. No charges were filed against Johnson.

During pretrial hearings, the State posited that Johnson may have assisted Fair in committing the murder. An accomplice can be charged with, and liable for, a particular crime committed by his principal. State v. Munden, 81 Wn.

App. 192, 197, 913 P.2d 421 (1996). There must be proof that the alleged accomplice aided or otherwise participated in the crime. See RCW 9A.08.020(3)(a). The State described Johnson as an "uncharged accomplice" and asserted that he "may have been involved in some way." The court granted a motion by Fair to prohibit the State from arguing along these lines in opening statement, reasoning that there was no evidence Fair and Johnson "did anything together."

Trial occurred between February and April 2017. The court allowed Fair to introduce evidence about Johnson under the "other suspect" rule, applicable to evidence that a specific person besides the defendant committed the charged crime. State v. Ortuno-Perez, 196 Wn. App. 771, 778, 782, 385 P.3d 218 (2016). The jury heard that Johnson's DNA was on the oil bottle. The jury also heard about Johnson's drive to the border.

Johnson, called by Fair as a witness, answered a limited set of questions after invoking his privilege against self-incrimination. He told jurors that he was interviewed by detectives four times and received immunity for two of those interviews; that he was not granted immunity for his trial testimony; and that he was never arrested, charged, or prosecuted in connection with Jinaga's death. The jury heard recordings of the police interviews with Johnson. They also heard a recording of Fair's interview. Fair did not testify.

The instructions proposed by the State included a standard instruction defining "accomplice":

4

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
> (1) solicits, commands, encourages, or requests another person to commit the crime; or
> (2) aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Typically, when accomplice liability is an issue, the instruction defining "accomplice" will be accompanied by a reference to that term in the to-convict instruction explaining that the jury must find that "the defendant or an accomplice" committed the criminal act. State v. Teal, 117 Wn. App. 831, 835, 73 P.3d 402 (2003), aff'd, 152 Wn.2d 333, 96 P.3d 974 (2004). Here, the State's proposed to-convict instruction did not include the words "or an accomplice" or any other language that would have allowed the jury to convict Fair on a theory of accomplice liability. The prosecutor asserted that the reason for including the definitional instruction was to counteract the anticipated defense argument that jurors faced a "binary choice" between Fair and Johnson. The prosecutor wanted to use the accomplice definition to suggest that the two men might have acted together to kill Jinaga, not to prove that they actually did. As support for the proposition that the two men might have acted together, the prosecutor observed that they spent time together during the party; their DNA was on items relevant to the crime found in the same bag; and they were both awake in the middle of the night calling and texting women.

Fair opposed giving the instruction. He argued it was not necessary to define "accomplice" for jurors because the State was not utilizing an accomplice liability theory as a basis to convict him. The court agreed with Fair:

> I think that really what we have here is we have evidence that Mr. Fair committed the crime. We have his DNA on the bathrobe and on the neck swab. We have evidence that Cameron Johnson committed the crime. We have his DNA on the oil bottle.
>
> Both of them have made inconsistent statements, Mr. Fair about whether he was asleep or not and Mr. Johnson about whether he called Ms. Jinaga or not.
>
> But we don't have any evidence that links the two of them. They just met that day of the Halloween party. There is no evidence they knew each other before. They spent time talking and listening to music in his car, in Johnson's car. There is no evidence there was any contact whatsoever after the party.
>
> And you have the phone records from both phones. They both called all sorts of people in the early morning hours after the party. There is no evidence they ever called each other.
>
> I just don't see any connection between the two of them that would justify the giving of an accomplice instruction.

The court declined to give the instruction, and the court also prohibited the State from arguing accomplice liability in closing.

Fair used closing argument to emphasize the "other suspect" evidence. He urged that the evidence of Johnson's guilt created reasonable doubt as to Fair's guilt. In rebuttal, the prosecutor reminded jurors that Fair was on trial, not Johnson.

The case was submitted to the jury on April 6, 2017. Deliberations failed to produce a unanimous verdict. On April 19, 2017, the court declared a deadlock and discharged the jury.

In anticipation of retrial, the State moved for reconsideration of the denial of the accomplice instruction. At a hearing on July 7, 2017, the prosecutor

argued that the court's rulings unfairly deprived the State of latitude to suggest that Fair and Johnson may have committed the crime together and left jurors with "an either/or proposition, either it's Cameron Johnson or Emanuel Fair." The court found no basis to change its decision.

We granted the State's request for discretionary review.

The State maintains that it was error to refuse to give the accomplice instruction. We review a trial court's choice of jury instructions for an abuse of discretion. State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253, review denied, 172 Wn.2d 1021 (2011). Instructions are constitutionally sufficient if they properly inform the jury of the applicable law, are not misleading, and allow the parties to argue their theories of the case. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). "Each side in a case may have instructions embodying its theory of the case if there is evidence to support that theory; it is error to give an instruction which is not supported by the evidence." State v. Benn, 120 Wn.2d 631, 654, 845 P.2d 289, cert. denied, 510 U.S. 944 (1993); see also Munden, 81 Wn. App. at 195. When determining if the evidence at trial was sufficient to support the giving of an instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

An accomplice theory requires proof that a person solicited, commanded, encouraged, or requested commission of the particular crime, or aided or agreed to aid commission of the crime. RCW 9A.08.020(3)(a). Mere presence is insufficient. State v. Knight, 176 Wn. App. 936, 949, 309 P.3d 776 (2013), review

denied, 179 Wn.2d 1021 (2014). The State must show that the accomplice had actual knowledge that the principal was engaged in the crime eventually charged and actual knowledge that he (the accomplice) was furthering that crime. RCW 9A.08.020(3)(a); State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).

On appeal, as below, the State relies primarily on the fact that an item bearing Johnson's DNA (the oil bottle) was found with an item bearing Fair's DNA (the bathrobe). The State also cites evidence that around 2:30 a.m., Johnson's laptop was used to access the music editing program Johnson and Fair had discussed during the party. According to the State, this proves that Fair and Johnson were together later, around the same time that a call was made from Johnson's phone to Jinaga's.

The State implies it can be inferred from the DNA evidence that Johnson handled the oil bottle and Fair handled the bathrobe and that each man was present in Jinaga's apartment after the party. Assuming without deciding that both inferences are reasonable, we cannot say that the presence of both items in the same bag after the murder gives rise to a reasonable and nonspeculative inference that Fair and Johnson were in the apartment together when the murder was committed or that either of them knowingly aided the other's commission of the murder. It is similarly speculative to say that because Fair and Johnson had talked about the music editing program earlier in the evening, the two men were together near 2:30 a.m. when Johnson's computer was used to access that program. Even assuming they were, that would not tend to show they were together at the time of the murder, which occurred over five hours later,

8

according to evidence introduced by the State. An issue should not be submitted to jurors when the evidence supporting it is speculative and conjectural. State v. Mriglot, 88 Wn.2d 573, 578, 564 P.2d 784 (1977).

The jury sent a question to the court during deliberations: "Is it a reasonable doubt if there is a second person involved in the act?" The court referred the jury to their instructions. The State points to the jury's question as affirmation that an accomplice instruction was needed. But the possibility that jurors were unsure how to answer that question does not change the standard the State was required to meet to get an accomplice instruction.

The State also cites Fair's closing argument to show an accomplice instruction was needed. Defense counsel was entitled to argue that the evidence concerning Johnson cast doubt on Fair's guilt. "Other suspect" evidence is admissible specifically because it suggests reasonable doubt as to the defendant. State v. Giles, 196 Wn. App. 745, 757, 385 P.3d 204 (2016), review denied, 188 Wn.2d 1007 (2017). When evidence of another suspect comes in, obtaining a conviction is likely to be more difficult, but that is not a reason to provide a jury instruction unsupported by the record. The State seeks the definitional instruction not to convict Fair as Johnson's accomplice, but rather to help jurors understand that Fair could be guilty of the murder notwithstanding evidence that another suspect might have been involved in the act. The cases cited by the State do not show that an accomplice instruction is warranted when there is insufficient evidence of complicity. See, e.g., State v. Alires, 92 Wn. App.

931, 935, 966 P.2d 935 (1998) (accomplice instruction was properly given when the record adequately showed the defendant's participation as an accomplice).

On the record before the trial court, the State's request for an accomplice instruction was correctly denied.

A second issue is whether the court unduly restricted what the State could say in closing argument. To counter the expected defense argument that the evidence of Johnson's guilt created reasonable doubt about Fair's guilt, the prosecutor wanted to tell jurors that "evidence implicating Mr. Johnson doesn't necessarily exculpate Mr. Fair," and "The fact that there is evidence implicating Mr. Johnson doesn't mean Mr. Fair didn't do the crime." The court refused to allow this argument, in part because it was too close to arguing accomplice liability and in part because the phrasing of the argument made it hard to understand. The court told the prosecutor, "If you get up in front of the jury and say, 'Evidence implicating Cameron Johnson doesn't exonerate Emanuel Fair,' the jury will be saying, 'What? What does that mean?' That's not permissible."

Because the State's accomplice theory lacked evidentiary support, it was proper for the trial court to prohibit the State from arguing accomplice liability. We affirm the limitations on argument imposed by the court to the extent that they prevent the State from arguing that Johnson was Fair's accomplice or vice versa. The court went too far, however, by prohibiting the State from arguing that evidence implicating Johnson did not exculpate Fair. The State must be allowed latitude to rebut the defense argument. The State may argue that the evidence

of Johnson's guilt does not preclude a finding of Fair's guilt, so long as the State does not assert that the two were accomplices.

The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

_Becker, J._,

WE CONCUR:

_Schindler, J_        _Appelwick, C.J._