# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

ESON PULEUEA HERR,

Appellant,

and

LATECIA LEE FORTUNE,

Defendant.

No. 84898-4-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Eson Herr appeals his convictions of first degree murder and first degree unlawful possession. He argues that the trial court erred by excluding photographs of guns found on a mobile phone that did not belong to Herr. Herr also argues that remand is required to strike the $500 victim penalty assessment (VPA). We remand to the trial court to strike the VPA from Herr's judgment and sentence as a ministerial matter. Otherwise, we affirm.

I

In July 2019, the State charged Herr with one count of first degree murder and one count of first degree unlawful possession of a firearm. The charges arose from the shooting death of Zula Werede.

The jury deadlocked at Herr's first trial. At Herr's second trial, Werede's friend, Biniam Araya, testified that on July 5, 2019, he and Werede drove in

Werede's car to Valley Ridge Park in Sea Tac to play soccer. After Werede parked, he and Araya changed into their soccer clothes and were walking toward the field when Werede indicated he had forgotten something, turned around, and walked back toward his car. Araya testified that a car then came in from an "unknown area," and he heard someone say, "Hey, what's up," followed by the sound of gunshots. Araya hid between two cars but was able to see a black sedan speeding away. Araya testified that he saw the shooter, who was driving the black sedan, and that he had "light-skin, white skin," and was wearing a flat-billed baseball hat.

After the black sedan left, Araya went to Werede, who was on the ground unconscious. Araya asked a nearby witness to call 911, and police arrived after about five minutes. Werede was declared dead at the scene. Araya later picked Herr out of a line-up, indicating that he was between 60 and 75 percent sure that Herr was the shooter.

Katy Cunningham, who was at the park with her two children, heard the gun shots and saw what she described as a dark blue Dodge Charger with chrome wheels, tinted windows, and "a spotlight on the side mirror" drive away. Another witness described seeing a four-door, black Charger with chrome wheels, tinted windows, and the driver's side window down, "peeling off" as if it was "in a hurry to get out of there." Yet another witness similarly described the vehicle as a newer model black Charger with tinted windows and chrome rims.

Footage of a car matching these descriptions was later found on videos that detectives retrieved from nearby cameras. A detective determined that the

2

suspect vehicle was a 2006 to 2010 Dodge Charger with certain distinctive features: tinted windows, a black grille, six-spoke wheels, a missing door protection strip on the rear driver's side door, and chrome-colored side mirrors. The detective issued a bulletin asking police departments regionally to be on the lookout for such a vehicle.

On July 6, 2019, Corporal Charlie Hinckle of the Federal Way Police Department saw a Charger matching the bulletin at a house on Ninth Avenue South in Federal Way. Hinckle radioed other officers then parked his car nearby and walked to a position where he could get a closer look. He saw two women standing in the driveway near the Charger, which he confirmed had chrome side mirrors as described in the bulletin. Hinckle watched as the two women retrieved a car cover and covered the Charger. He later testified that the women seemed nervous and, after having a short discussion, "ended up taking the car cover back off [and] putting it in the trunk of the Charger." One of the women then got into the driver's seat and drove away. Officers stopped the Charger at a 7-Eleven and ordered the driver, who was later identified as Travis Grantham, out of the car. Grantham complied, and she told a detective that the Charger was associated with someone with the moniker "$crill" and showed the detective a picture of $crill on her phone. An officer queried that moniker in a database, which indicated that it was associated with Herr.

Meanwhile, officers continued to surveil the Ninth Avenue house, where Hinckle had first observed the Charger. A witness would later testify that Herr lived at the house with his girlfriend, Latecia Fortune, Fortune's friends, Kelsey and Kyle

DelDuca, and the DelDucas' mother, Stephani Hewlett. When officers later searched the bedroom that Herr and Fortune shared, they found a picture of Herr with the Charger; they also found Herr and Fortune's fingerprints on the inside and outside of the Charger, which Hewlett testified was driven by Herr. Additionally, officers found a flat-brimmed ball cap in the Charger.

Hewlett's brother, Jordon Hewlett, lived across the street from the Ninth Avenue house.[1] Jordon testified that at some point in the early morning hours of July 7, Fortune called and asked him to go to the house and "grab some of their things," "[s]ome bags that were packed," from Herr and Fortune's bedroom. He testified that he could hear Herr's voice in the background. Jordon was with his friend, Mark Christie, and he testified that after the call with Fortune, Christie drove him to the Ninth Avenue house in Christie's girlfriend's Kia. Once there, Christie stayed in the car while Jordon went inside the house, retrieved Fortune and Herr's bags, and brought them to the car. Christie put the bags in the Kia, and the two men drove off.

Officers followed, stopped the Kia, interviewed Christie and Jordon, and eventually seized Jordon's phone and searched it pursuant to a warrant. The search revealed multiple text messages with a contact identified as "$crill." It also revealed what the prosecutor later described as "small thumbnail photographs of what appear to be two different guns." At trial, Herr's counsel indicated that he intended to introduce the photographs from Jordon's phone, arguing that they

---

[1] For clarity, we will refer to Jordon Hewlett as "Jordon." We intend no disrespect.

4

showed "what could possibly be a 40 caliber . . . that the State's detectives could not rule out as a 40 caliber" and "[t]his could potentially be the murder weapon." The State moved to exclude the photographs. The trial court excluded the photographs as irrelevant, explaining, "I don't see how it's anything more than speculative at best," and "based on the information I have right now, I do not see how those photographs that were found on [Jordon's] phone and that were created and stored there at an unknown time and that are not of any firearm known to be relevant to this case, I just don't see how that's relevant."

The gun used to kill Werede was never found. However, police recovered four, 40-caliber shell casings from the scene of the shooting. Matthew Olmstead, the lead detective investigating Werede's shooting, testified that all four casings appeared to have been fired from the same gun. Olmstead swabbed the casings for DNA and sent the swab to the Washington State Patrol crime laboratory. A witness from the crime lab testified that she obtained a partial DNA profile from the swabs that was consistent with DNA originating from two individuals. She also testified that she compared the profile with a reference sample from Herr, and it was 98 billion times more likely that the DNA mixture on the casings originated from Herr and an unknown contributor than from two unrelated individuals randomly selected from the U.S. population.

The jury found Herr guilty as charged. He appeals.

5

II

Herr argues that the trial court erred and deprived him of his constitutional right to present a defense by excluding the gun photographs found on Jordon's phone. We disagree.

A

A defendant has a right under the state and federal constitutions to present a defense. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22. "This right is not absolute" and "may, 'in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process,'" including the exclusion of irrelevant or otherwise inadmissible evidence. State v. Caril, 23 Wn. App. 2d 416, 426, 515 P.3d 1036 (2022) (internal quotation marks omitted) (quoting State v. Giles, 196 Wn. App. 745, 756-57, 385 P.3d 204 (2016)), review denied, 200 Wn.2d 1025, 522 P.3d 50 (2023), cert. denied, 144 S. Ct. 125, 217 L. Ed. 2d 39 (2023).

"In analyzing whether a trial court's evidentiary decision violated a defendant's . . . right to present a defense, we first review the court's evidentiary ruling for an abuse of discretion." Id. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). "If we conclude that the evidentiary ruling was not an abuse of discretion, we then consider de novo whether the exclusion of evidence violated the defendant's constitutional right to present a defense." Caril, 23 Wn. App. 2d at 427.

B

"Evidence which is not relevant is not admissible." ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The proponent of the evidence bears the burden of establishing its relevance and materiality." State v. Bass, 18 Wn. App. 2d 760, 799, 491 P.3d 988 (2021).

The gun photographs do not make any fact of consequence to the determination of Herr's guilt more or less probable than it would be without the photographs. When asked to explain why the photographs were relevant, Herr's counsel responded that although Herr was not mounting an other suspect defense, "in [his] pleading not guilty [he is] clearly saying somebody else was the shooter in this case." And "[i]f this is a 40 caliber in these pictures on [Jordon's] phone, Jordon . . . had access to Mr. Herr's car," so "this is part of that."

But the jury would need to speculate to link the photos to the case in any manner. Nothing in the record indicates the caliber of the guns depicted (much less that they were 40 caliber), whether they actually existed, when or where they were photographed, or how the photographs came to be on Jordon's phone. To the contrary, the State represented, and Herr did not dispute, that neither the date of the photographs nor the caliber of the guns depicted could be determined from the images.

Furthermore, when asked whether there was evidence that Jordon had access to Herr's car, defense counsel responded that Jordon "lived across the

street from . . . Herr for three months and up until that day." Herr also points out that Jordon testified at Herr's first trial that he was able to access the Ninth Avenue house "without any problem" and without the need to contact anyone. But the jury would need to speculate to find, from the mere fact that Jordon lived across the street and was able to access the house, that Jordon *also* had access to Herr's car.

In short, any connection between Jordon, the guns in the photographs, and Werede's murder is entirely speculative. Because speculative evidence is irrelevant, State v. Wasuge, 32 Wn. App. 2d 226, 231, 555 P.3d 910 (2024), the trial court did not abuse its discretion by excluding photographs of the gun. Cf. State v. Wade, 186 Wn. App. 749, 767, 346 P.3d 838 (2015) (trial court did not err by excluding evidence that murder victim's ex-boyfriend "was a 'bad actor with a violent history involving [the victim]'" where "the facts and circumstances d[id] not show a nonspeculative link" between the ex-boyfriend and the murder). Because "[d]efendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence," State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010), the trial court's ruling did not deprive Herr of his right to present a defense.

III

Herr next contends that we should remand to the trial court to strike the $500 VPA from his judgment and sentence pursuant to recent statutory amendments that prohibit courts from imposing the VPA on indigent defendants. See LAWS OF 2023, ch. 449, § 1 (amending RCW 7.68.035); State v. Ellis, 27 Wn.

App. 2d 1, 16, 530 P.3d 1048 (2023) (amendments to RCW 7.68.035 apply to cases on direct appeal).  The State does not dispute that Herr is indigent, and it does not object to a remand to strike the VPA.  Accordingly, we remand to the trial court to strike the $500 VPA from Herr's judgment and sentence as a ministerial matter.  Otherwise, we affirm.

_Birk, J._

WE CONCUR:

_Díaz, J._          _Bowman, J._