**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | |
| | No. 81033-2-I |
| v. | |
| | UNPUBLISHED OPINION |
| NATASHIA MONIQUE BRITT, | |
| Appellant. | |

DWYER, J. — Natashia Britt appeals from her convictions for one count of assault of a child in the first degree, two counts of assault of a child in the second degree, and two counts of communicating with a minor for immoral purposes. She raises numerous contentions concerning the validity of her convictions and the imposition of a criminal filing fee and a DNA collection fee. We affirm the convictions, but remand to the trial court for a determination of whether Britt must pay a DNA collection fee and to strike the criminal filing fee.

I

Britt has three children, J.B., B.C., and D.A. Prior to 2015, the children lived together with Britt in Des Moines. During this time, Britt whipped J.B., then approximately 10 years old, and B.C., then approximately 8 years old, with a belt on multiple occasions. Britt forced the children to remove their clothing before

Citations and pin cites are based on the Westlaw online version of the cited material.

each whipping. These whippings left visible bruise marks on the childrens' bodies that would last for days, which Britt would instruct the children to hide from others.

B.C.'s bruises were discovered by his school nurse, resulting in the Children's Administration of the Department of Social and Health Services (CPS) removing all three children from Britt's care. CPS placed the children with Britt's aunt, Linda Rogers. Rogers never physically disciplined the children, but did observe scarring on B.C.'s body.

Then, in 2016, the children were returned to Britt, who had moved to Tacoma. Britt resumed her prior behavior, whipping both J.B. and B.C. with a cable cord on multiple occasions. During one particular whipping, Britt directed B.C. to strip naked, used packing tape to tape B.C.'s mouth shut, taped B.C.'s hands behind his back, and taped his legs together, then whipped his naked body with the cord. This left bruises on B.C.'s back, buttocks, and hamstring.

During this time, Britt also beat, and in one occasion strangled, B.C. If B.C. resisted the beatings, Britt would enlist J.B. to help restrain B.C. so that she could beat him. These beatings sometimes left scars on the boys' bodies.

In addition to the physical abuse, Britt also showed the boys sexually explicit material, including a pornographic video entitled "Two Girls, One Cup."

Later in 2016, CPS once again removed J.B. and B.C. from Britt's care, placing them with Regina and Norman Golden, Britt's mother and stepfather, who were already caring for Regina's other daughter, A. However, because Regina

2

Golden would not participate in a background check, CPS explained that she would have to move out of the home.

J.B. told Regina Golden about the beatings and whippings, and showed her the pornographic video that Britt had showed the boys. Regina Golden then reported the abuse to the boys' assigned social worker, which resulted in the Tacoma Police Department opening an investigation into the abuse allegations. During this investigation, Detective William Muse conducted multiple forensic interviews of both J.B. and B.C., and also interviewed Britt. During her interview with the detective, Britt initially denied ever hitting the children, but eventually admitted that she would "[p]op the children on their legs." By a "pop," Britt meant an open-handed strike.

The State subsequently charged Britt with one count of assault of a child in the first degree, two counts of assault of a child in the second degree, two counts of communicating with a minor for immoral purposes, one count of sexual exploitation of a minor, and one count of child molestation in the first degree. Britt informed the State that she would pursue a defense of reasonable parental discipline. The matter was called for trial in September 2017.

During jury selection, the following exchange occurred with juror 26:

> [Prosecutor:] Now, in cases where it's heavy with witness testimony, I anticipate you'll be told that you'll rarely, if ever, get to hear testimony twice. If you're allowed to take notes, is there anyone here who says, you know what, even if I take notes, I'm not going to be able to retain this evidence over the course of three weeks? Anyone here feel that? It's okay, we just need to know that. Juror No. 26.
> JUROR NO. 26: I'm not really good at taking notes and whatever I write down usually is not –
> [Prosecutor]: So what if you're able to afterwards talk with other jurors and you can all compare what you recall, maybe be refreshed?

> Would you -- do you feel that you could, with those assistances, be able to recall testimony that occurred maybe two, three weeks ago?
> JUROR NO. 26: I don't think so.

Subsequently, no party challenged, for cause or through the use of a preemptory challenge, juror 26 and she was seated on the jury.

At trial, the State presented testimony from several witnesses, including B.C., J.B., Detective William Muse, corrections officer Torvald Pearson, Linda Rogers, Norman Golden, and Regina Golden's mother, Christine Kilpatrick.

During Rogers' testimony, the State asked her whether she had ever hit B.C. After Rogers answered in the negative, the State followed up by asking whether she had ever wanted to hit B.C. Over defense objection, the trial court permitted Rogers to again answer in the negative.

During Officer Pearson's testimony, the State admitted several recordings of telephone calls made by Britt while she was in jail. On one of these calls, Britt admitted to showing the boys a pornographic video. The State also attempted to admit testimony explaining that the recordings played for the jury were only excerpts of all of the recorded calls and describing the total length of all the calls. However, defense counsel successfully objected to the admission of this testimony. Later, the defense stipulated to informing the jurors that the recordings presented to them were excerpts from all of the recorded telephone calls.

Despite numerous attempts to locate her to compel her testimony by subpoena, Regina Golden did not testify at trial. Multiple State witnesses, including the boys and Christine Kilpatrick, testified that Regina Golden had been out of state for the three months leading up to and including the month of trial.

4

However, the defense presented testimony from a defense investigator asserting that the investigator had successfully delivered a subpoena to Regina Golden in Washington only a few days before the start of trial.

Following the presentation of evidence, the jury found Britt guilty of assault of a child in the first degree, both counts of assault of a child in the second degree, and both counts of communicating with a minor for an immoral purpose. Sentences within the standard range for her offenses were imposed.

Britt appealed to Division Two, which transferred the matter to us for resolution. Subsequently, the trial court entered an amended judgment, modifying the conditions of Britt's sentence by removing several restrictions that had previously been set forth in the original judgment.

II

Britt first contends that the trial court erred by failing to, sua sponte, dismiss juror 26 because, she asserts, the juror's cognitive inability disqualified her from jury service. We disagree.

We review a trial court's decision regarding whether to excuse a juror for an abuse of discretion. State v. Elmore, 155 Wn.2d 758, 768-69, 123 P.3d 72 (2005); State v. Rupe, 108 Wn.2d 734, 748, 743 P.2d 210 (1987). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010) (quoting State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

Generally, all United States citizens who are at least 18 years old, are able to communicate in English, and reside in the county in which they are summoned to serve, are qualified to serve as jurors in Washington. RCW 2.36.070. It is a trial judge's duty, however, to "excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110.

"While a trial court may have a duty to sua sponte intercede where actual bias is evident or where the defendant is not represented by counsel, this duty must also be balanced with the defendant's right to be represented by competent counsel." State v. Phillips, 6 Wn. App. 2d 651, 667, 431 P.3d 1056 (2018), review denied, 193 Wn.2d 1007 (2019). A trial court must therefore exercise caution before injecting itself into the jury selection process, because the decision to select or dismiss a juror is often "based on the trial counsel's experience, intuition, strategy, and discretion." State v. Lawler, 194 Wn. App. 275, 287, 374 P.3d 278 (2016).

Britt asserts that the trial judge should have, sua sponte, dismissed juror 26 because she manifested unfitness as a juror by reason of mental defect. Specifically, Britt asserts that the following exchange required dismissal:

> [Prosecutor:] Now, in cases where it's heavy with witness testimony, I anticipate you'll be told that you'll rarely, if ever, get to hear testimony twice. If you're allowed to take notes, is there anyone here who says, you know what, even if I take notes, I'm not going to be able to retain this evidence over the course of three weeks? Anyone here feel that? It's okay, we just need to know that. Juror No. 26.

> JUROR NO. 26: I'm not really good at taking notes and whatever I write down usually is not –
>
> [Prosecutor]: So what if you're able to afterwards talk with other jurors and you can all compare what you recall, maybe be refreshed? Would you -- do you feel that you could, with those assistances, be able to recall testimony that occurred maybe two, three weeks ago?
>
> JUROR NO. 26: I don't think so.

According to Britt, during this exchange juror 26 manifested unfitness by unequivocally stating that she would not be able to remember testimony that occurred weeks in the past and, therefore, the trial court abused its discretion by not dismissing her regardless of the absence of any challenge raised by either party.

Britt is wrong. First, juror 26 did not unequivocally state that she would be unable to recall testimony due to a mental defect. When placed in the context of her answers to a written juror questionnaire—in which she stated that she did not have any physical or mental defects she thought justified excusing her from service and in which she explained that she had graduated from high school, attended some college, had worked for Boeing for the previous six years, and had previously served on a jury—it is plain that juror 26 was simply stating an honest, and typical, belief that she thought that she would have difficulty remembering specific testimony weeks after hearing it. She plainly was not stating unequivocally that she had a mental defect warranting dismissal from jury service.

Second, Britt never challenged, for cause or through a preemptory challenge, juror 26.[1] Many other jurors were challenged and dismissed, so the

---

[1] The State contends that Britt therefore failed to properly preserve this claim of error for appeal. However, under RAP 2.5(a)(3) a party may raise a "manifest error affecting a

silence of counsel as regarding juror 26 weighs heavily against a sua sponte dismissal. While a trial court "may have a duty to sua sponte intercede where actual bias is evident or where the defendant is not represented by counsel," here the defendant was represented by counsel who interposed numerous challenges to potential jurors. Phillips, 6 Wn. App. 2d at 667. The trial court could have inferred from defense counsel's silence that Britt wanted juror 26 to serve on the jury, and it would have been improper for the court to intervene in the defense's strategic decision-making.

The trial court was not required to, sua sponte, dismiss juror 26.

III

Britt next contends that the trial court erred by preventing defense counsel, on cross-examination of certain State witnesses during the State's case in chief, from eliciting evidence that Regina Golden remained in Washington. Britt contends that this prevented her from attacking the credibility of prosecution witnesses who asserted that Regina Golden was not in Washington, thereby violating her constitutional right to present a defense under the Sixth Amendment to the United States Constitution. Britt concedes that she was later permitted to introduce this evidence in her case in chief and to argue her theory to the jury, but nevertheless contends that the trial court's refusal to permit her to introduce

---

constitutional right" for the first time on appeal. "A constitutional error is manifest where there is prejudice, meaning a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial." State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015) "Criminal defendants have a federal and state constitutional right to a fair and impartial jury." Irby, 187 Wn. App. at 192 (citing Taylor v. Louisiana, 419 U.S. 522, 526, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975); State v. Brett, 126 Wn.2d 136, 157, 892 P.2d 29 (1995)). The presence of an unqualified juror violates this right, and this error is prejudicial, requiring a new trial. See Irby, 187 Wn. App. at 193 (requiring new trial when record established that juror was actually biased, and therefore unqualified, but was seated without challenge).

this evidence through cross-examination during the State's case in chief requires reversal. We disagree.

"The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant a meaningful opportunity to present a defense." State v. Giles, 196 Wn. App. 745, 756, 385 P.3d 204 (2016) (citing State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010)). This right to present a defense is not absolute. Jones, 168 Wn.2d at 720. "Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence." Jones, 168 Wn.2d at 720. "[I]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). "The State's interest in excluding prejudicial evidence must also 'be balanced against the defendant's need for the information sought,' and relevant information can be withheld only 'if the State's interest outweighs the defendant's need.'" Jones, 168 Wn.2d at 720 (quoting Darden, 145 Wn.2d at 622). However, in instances when a defendant seeks to introduce relevant evidence of high probative value "it appears no state interest can be compelling enough to preclude its introduction." State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983).

"We review the trial court's evidentiary rulings for abuse of discretion and defer to those rulings unless 'no reasonable person would take the view adopted by the trial court.'" State v. Clark, 187 Wn.2d 641, 648, 389 P.3d 462 (2017) (internal quotation marks omitted) (quoting State v. Atsbeha, 142 Wn.2d 904,

914, 16 P.3d 626 (2001)). "If the court excluded relevant defense evidence, we determine as a matter of law whether the exclusion violated the constitutional right to present a defense." Clark, 187 Wn.2d at 648-49 (citing Jones, 168 Wn.2d at 719).

Our Supreme Court recently considered the constitutional right to present a defense in State v. Arndt, 194 Wn.2d 784, 453 P.3d 696 (2019). Therein, the court considered whether limitations imposed by the trial court on the testimony elicited from a certified arson investigator, Dale Mann, violated the defendant's right to present a defense. Arndt, 194 Wn.2d at 796, 812-814. In concluding that the defendant's right to present a defense was not violated, the court noted (1) that the defendant's "proffered evidence was not excluded entirely and Mann was able to testify at length for the defense" and (2) that the defendant "was able to advance her defense theory." Ardnt, 194 Wn.2d at 813-14.

"Evidence is relevant when it is both material—the fact to be proved 'is of consequence in the context of the other facts and the applicable substantive law'—and probative—the evidence has a 'tendency to prove or disprove a fact.'" Giles, 196 Wn. App. at 757 (internal quotation marks omitted) (quoting State v. Sargent, 40 Wn. App. 340, 348 n.3, 698 P.2d 598 (1985)). Relevant evidence is generally admissible. Hamblin v. Castillo Garcia, 9 Wn. App. 2d 78, 87, 441 P.3d 1283 (2019) (citing Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 729, 315 P.3d (2013)). The party seeking to admit evidence bears the burden of establishing its relevance. See Giles, 196 Wn. App. at 757 ("As with all evidence, the proponent bears the burden of establishing the admissibility of

'other suspect' evidence."); State v. Yokel, 196 Wn. App 424, 433, 383 P.3d 619 (2016). However, relevant evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. "The Rules of Evidence favor admitting relevant evidence, so the party opposing admission bears the burden of establishing" that the probative value of relevant evidence is substantially outweighed by such considerations. Hamblin, 9 Wn. App. 2d at 87 n.22.

The parties herein agree that Britt was able to introduce all of the substantive evidence regarding Regina Golden's whereabouts that was necessary to support Britt's defense theory that the State's witnesses were not credible because they lied about Regina Golden's whereabouts. Just as the defendant in Arndt was able to advance her defense theory, so was Britt able to advance her defense theory concerning the whereabouts of Regina Golden and to argue that theory to the jury. Thus, as in Arndt, Britt's right to present a defense was not violated by any of the challenged evidentiary rulings.[2]

---

[2] We further note that Britt has no right to dictate the manner and order in which evidence is presented at trial. ER 611(a) gives that authority to the trial court, specifically authorizing the trial court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Thus, the rules of evidence authorize trial courts to control when witnesses testify and when evidence is presented. This includes the ability to limit cross-examination when sufficient evidence of the fact at issue has already or will be placed before the jury by other means. ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON, § 1.06(1) n.5 (5th ed. 2017) (citing United States v. Jackson, 756 F.2d 703 (9th Cir. 1985)).

Furthermore, Britt fails to establish that the trial court abused its discretion in either of the two challenged evidentiary rulings. Britt contends that the trial court made two specific erroneous evidentiary rulings that deprived her of her right to present a defense: (1) during the cross-examination of Detective William Muse, the trial court upheld an objection to a question asking if Regina Golden had informed the detective when she planned to return to Washington, (2) during the cross-examination of Christine Kilpatrick, the trial court sustained an objection to eliciting testimony regarding the parentage of Regina Golden's daughter, A.[3]

As to the first ruling, when asked to explain the relevance of an out of court statement from Regina Golden to Detective Muse regarding plans to return to Washington, defense counsel answered and engaged in the following exchange with the court:

> [Defense Counsel]: Bias, Your Honor.
> THE COURT: . . . I'm going to sustain as to relevance, if there's some indication of bias that would be used to impeach any testimony or any out-of-court statements made by Ms. Golden, but there's been no out-of-court statements admitted for the truth of the matter asserted . . . there's nothing to impeach.
> [Defense Counsel]: Relevance, in case we manage to get Ms. Golden?
> THE COURT: I'm sustaining the objection as to relevance at this time. If you have reason to believe that she's likely to be produced, we'll re-examine the issue.
> [Defense Counsel]: Okay.

---

[3] Britt also contends that two additional evidentiary rulings during the cross-examination of State's witnesses were improper. However, the record establishes that in both instances, following brief discussions with opposing counsel and the court, defense counsel opted to withdraw the questions to which the State objected, stating that the desired testimony would be obtained from other witnesses rather than fully explaining the purpose behind the questioning. Defense counsel's choice does not constitute an abuse of the trial court's discretion.

Britt asserts that this ruling was erroneous because the bias defense counsel sought to establish through the testimony was not bias on the part of Regina Golden, but bias on the part of other witnesses who defense counsel asserted were lying about Regina Golden's whereabouts. However, the record plainly shows that defense counsel did not provide such an explanation to the trial court at the time. Indeed, defense counsel actually reinforced the court's apparent belief that the defense sought to impeach Regina Golden's statements by requesting that the court conclude that the testimony was relevant in case Regina Golden testified. Because Regina Golden had not testified and no out of court statements by Regina Golden had been admitted for the truth of the matter asserted therein at the time of this ruling, defense counsel failed to establish the relevance of any out of court statement by Regina Golden regarding plans for returning to Washington.[4] Therefore, the trial court's ruling was not erroneous.

As to the second ruling, the trial court analyzed the issue of whether the defense could elicit testimony regarding the parentage of Regina Golden's daughter, A, under ER 403 and concluded that the probative value of the evidence was substantially outweighed by the risk of confusing the issues for the jury. In explaining why the defense sought to elicit this testimony, defense counsel stated that

> [A] is not the daughter of Norman Golden. That is a fact that we are already very well aware of. The issue is that because we don't believe it is necessarily—how do I want to say this—we don't believe that—we believe that there's a bias inherent in them not wanting to say that Ms. Golden has been here the entire time, okay,

---

[4] The proponent of evidence bears the burden of explaining to the trial court the legal theory under which the proponent believes the evidence is admissible. Giles, 196 Wn. App. at 759-60 n.6. Thus, any lack of clarity is the fault of the proponent.

13

and that they are intentionally trying to promulgate that. We don't believe that it is logical or truthful that Ms. Golden has somehow left her daughter with the stepfather and has completely abandoned the home and is no longer parenting her own daughter simply because of some CPS order in regards to the other three children, and so we are trying to establish that Mr. Golden is not, in fact, the parent of [A], has no parental rights with [A], has no ability to sign any sort of emergency paperwork or anything else that may come about, and that this witness was—so we are trying to establish that link, and that's what Defense was doing.

In essence, defense counsel sought to support an inference that because Regina Golden's daughter was not Norman Golden's daughter and was still in Washington, Regina Golden was likely to still have been in Washington to take care of her, and therefore the State witnesses that asserted that she was elsewhere were likely lying and were therefore not credible as to their accusations against Britt. Given this extensive inferential chain, the trial court's conclusion that the probative value of this evidence was substantially outweighed by the risk of confusing the jury plainly does not rise to the level of an abuse of discretion. See State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (noting evidence could confuse the issues for the jury by focusing attention away from the charged burglary); ER 403. Indeed, Britt does not actually assert that the trial court was wrong to conclude that the complex inferential chain posed a substantial risk of confusing the issues for the jury.

We further note that the trial court's conclusion is strengthened by the fact that, prior to this ruling, the defense had informed the trial court that it was able to present a witness that could testify to having actually met with Regina Golden in Washington during the time the State's witnesses asserted that she was not in Washington. This rendered the elaborate inferential chain pertaining to the

parentage of Regina Golden's daughter unnecessary to enable the defense to attack the credibility of the State's witnesses. Britt has therefore failed to establish that the trial court's ruling was an abuse of discretion.

IV

Britt next asserts that her convictions for assault against B.C. should be reversed because the trial court erroneously admitted testimony from Linda Rogers, stating that Rogers had never wanted to hit B.C. This is so, Britt asserts, because the evidence was not relevant to whether Britt had assaulted B.C. and was prejudicial in that it undermined Britt's defense that her disciplining of B.C. was reasonable and moderate. While we agree that the evidence was not relevant, we conclude that its admission was harmless.

Again, "[e]vidence is relevant when it is both material—the fact to be proved 'is of consequence in the context of the other facts and the applicable substantive law'—and probative—the evidence has a 'tendency to prove or disprove a fact.'" Giles, 196 Wn. App. at 757 (internal quotation marks omitted) (quoting Sargent, 40 Wn. App. at 348 n.3).

"An error in admitting evidence that does not result in prejudice to the defendant is not grounds for reversal." State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997) (citing Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983)). Such an error is "not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been

materially affected had the error not occurred."[5]  State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981).

"A parent has a right to use reasonable and timely punishment to discipline a minor child within the bounds of moderation and for the best interest of the child. . . . For this purpose, a parent may inflict *reasonable* corporal punishment."  State v. Singleton, 41 Wn. App. 721, 723, 705 P.2d 825 (1985) (citing State v. Thorpe, 429 A.2d 785, 788 (1981)).  The trier of fact may consider the following in determining the reasonableness of punishment: "the age, size, sex, and physical condition of both child and parent, the nature of the child's misconduct, the kind of marks or wounds inflicted on the child's body, the nature of the instrument used for punishment, etc."  Singleton, 41 Wn. App. at 723-24 (citing Harbaugh v. Commonwealth, 209 Va. 695, 167 S.E.2d 329, 332 (1969)).  The force used to discipline a child must be "reasonable and moderate as *objectively* determined by a jury."  Singleton, 41 Wn. App. at 724 (emphasis added).

Here, Britt contends that the admission of a statement by Rogers that she never wanted to hit B.C. was not relevant to determining whether Britt assaulted or reasonably physically disciplined B.C.  Britt further asserts that the admission of this evidence was highly prejudicial because it set up the jury to compare Rogers' and Britt's treatment of the children to undermine a reasonable discipline defense.  While Rogers' desire, or lack thereof, to hit B.C. is plainly not relevant

---

[5] "Because the error here resulted from violation of an evidentiary rule, not a constitutional mandate, we do not apply the more stringent 'harmless error beyond a reasonable doubt' standard."  Bourgeois, 133 Wn.2d at 403 (citing State v. Cunningham, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)).

to determining whether Britt ever struck B.C. or whether the force Britt used to so strike B.C. was objectively reasonable, it is equally plain that the admission of this evidence did not prejudice Britt's defense of reasonable discipline. Whether Rogers' believed physical force was desirable, let alone reasonable or unreasonable, is irrelevant because the defense of reasonable discipline involves the application of an objective standard. The jury instruction for Britt's defense properly informed the jury that it was required to "determine whether the force used, when viewed objectively, was reasonable and moderate." The jury is presumed to have followed this instruction. See Spivey v. City of Bellevue, 187 Wn.2d 716, 389 P.3d 504 (2017). Because Britt does not contend that the jury failed to follow its instructions, we conclude that the jury properly considered Britt's defense of reasonable parental discipline using the proper objective standard.[6] Thus, any error in admitting Rogers' irrelevant testimony that she never desired to hit B.C. was harmless.

V

Britt next contends that her counsel at trial provided constitutionally ineffective assistance and that this merits reversal. This is so, Britt asserts, because defense counsel did not object to the admission of multiple inadmissible statements by B.C. at trial. In response, the State asserts that Britt cannot establish ineffective assistance because defense counsel had sound strategic

---

[6] Although not determinative, we further note that Britt does not contend that the State argued that the jury's determination should be influenced by Rogers' statement that she never wanted to hit B.C. Indeed, it appears from the record that other than during Rogers' testimony, the fact that she never wanted to hit B.C. was never mentioned by anyone during the trial.

17

reasons to permit the admission of B.C.'s statements and relied upon them to support Britt's defense theory. The State has the better argument.

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." State v. Anderson, 9 Wn. App. 2d 430, 454, 447 P.3d 176 (2019) (citing Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A defendant seeking to establish ineffective assistance must show that (1) counsel provided representation so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced her. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

"To prevail on an ineffective assistance claim, a defendant alleging ineffective assistance must overcome 'a strong presumption that counsel's performance was reasonable.' Accordingly, the defendant bears the burden of establishing deficient performance." State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (citation omitted) (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." See Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (concluding that the failure to discuss the possibility of an appeal with a client is usually unreasonable). To prevail on an ineffective assistance claim, a defendant who successfully establishes deficient

performance must also establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." Kyllo, 166 Wn.2d at 862.

Britt contends that her counsel provided ineffective assistance because he did not protest the admission of several out of court statements made by B.C. during forensic interviews that pertained to the communication with a minor for immoral purposes charge. According to Britt, such statements were inadmissible hearsay and were prejudicial. In response, the State concedes that defense counsel could have objected to the admission of these out of court statements, but asserts that it was a reasonable strategic choice to not object. This is so, the State asserts, because (1) the defense relied on a theory that compared B.C.'s out of court statements regarding the communication with a minor for immoral purposes misdemeanor charges with his live testimony to attack B.C.'s credibility, and (2) the jury had already heard Britt admit on one of her recorded jail calls that she had shown a pornographic video to both J.B. and B.C. This, the State further avers, was a reasonable strategic choice because it allowed the defense to question B.C.'s credibility as to all the testimony he provided without suffering any real harm to Britt because the recorded telephone call admission already supported the communication with a minor for immoral purposes charges. The record supports the State's argument.

In closing argument, defense counsel repeatedly argued that the jury should closely compare B.C.'s out of court statements from his forensic interviews with his live testimony because his statements were inconsistent.

19

Plainly, the defense strategy involved persuading the jury that B.C.'s testimony was not credible. Furthermore, such a strategy was eminently reasonable, as it allowed the defense to argue that the jury could infer, having observed B.C.'s inconsistent statements regarding the misdemeanor charges, that B.C.'s testimony as to the more serious felony assault charges was also not credible. Furthermore, the benefit of challenging B.C.'s credibility on these felony charges significantly outweighed any risk to Britt from the admission of B.C.'s out of court statements regarding the communication with a minor for immoral purposes misdemeanor charges because those charges were already strongly supported by the presentation of Britt's recorded phone call admitting that she had shown J.B. and B.C. a pornographic video. Britt has therefore failed to establish that her counsel's performance was deficient. Thus, her claim fails.

VI

Britt next contends that the prosecutor committed misconduct by seeking to elicit testimony explaining that the jury would only be presented with excerpted portions of all of Britt's recorded jail telephone calls. This is so, Britt asserts, because eliciting such testimony would enable the jury to speculate that the defense was intentionally hiding evidence. In response, the State asserts that there was no misconduct because (1) when Britt objected to the State's attempt to solicit such testimony the trial court sustained the objection, thus granting the defense the relief it requested, and (2) defense counsel stipulated to informing the jury that they would hear only excerpts of the recorded jail calls. The State has the better argument.

20

The record establishes that Britt received the remedy she requested at trial regarding the State's allegedly improper attempt to elicit testimony that the jury was being presented with excerpts of recorded jail telephone calls—the trial court sustained Britt's objection to the admission of such testimony. When a party objects and receives the remedy it requests, it cannot complain that more was required on appeal as "[t]he law presumes that th[is] remed[y] [was] effective." Giles, 196 Wn. App. at 769 (citing State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008)). Britt cannot now complain of an error for which she received the remedy she requested at trial.

Furthermore, the record establishes that defense counsel stipulated to informing the jury that they were hearing excerpts of all the recorded jail telephone calls.[7] It is plainly not prosecutorial misconduct to inform the jury of information which defense counsel has stipulated may be presented to the jury. Britt has therefore failed to establish that the prosecutor committed misconduct.

VII

Britt next contends that we must remand this matter to the trial court in order to correct several deficiencies in the judgment and sentence relating to the conditions of her sentence. In response, the State asserts that this contention is moot because the trial court has already issued an amended judgment containing all of the modifications requested herein by Britt.

---

[7] Additionally, there was never any evidence presented to suggest, nor was any argument ever made, that the jury was only permitted to hear excerpts of the recorded jail telephone calls because the defense blocked the admission of all of those calls. In fact, the record shows just the opposite: the State elicited testimony herein that the prosecutor's office had requested that the excerpts of the calls be made.

An issue is moot "if a court can no longer provide effective relief." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). Generally, we will not review a moot question. Global Neighborhood v. Respect Wash., 7 Wn. App. 2d 354, 375, 434 P.3d 1024 (citing Citizens for Financially Responsible Gov't v. City of Spokane, 99 Wn.2d 339, 350, 662 P.2d 845 (1983)), review denied, 193 Wn.2d 1019; cert. denied, 140 S. Ct. 638, 205 L. Ed. 2d 389 (2019).

Britt does not dispute that the trial court entered an amended judgment correcting the errors she asserts require reversal, but nevertheless asserts that we must still reverse because the Department of Corrections will disregard the amended judgment. Because this entirely speculative assertion—about an entity that is not even a party to this case—is unsupported by the record, we agree with the State that Britt's contentions regarding the conditions of her sentence set forth in the original judgment order are moot and decline to consider them.[8]

VIII

Finally, Britt contends that we must also remand this matter to the trial court to strike a $100 DNA collection fee and a $200 criminal filing fee imposed as part of Britt's sentence. The State concedes that the $200 criminal filing fee

---

[8] Britt also contends that remand is required because the trial court issued the amended judgment after Britt filed her appeal but without first obtaining permission from this court pursuant to RAP 7.2. RAP 7.2(e)(2) states that if an order entered by the trial court "will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion." The State concedes that this court never granted permission to the trial court to enter an amended judgment, but asserts that we should treat the amended judgment as if such permission had been granted for the sake of judicial economy. Because it would be an unnecessary waste of judicial resources to disregard the amended judgment—which both parties agree corrects the challenged deficiencies of the original judgment—and remand this case for entry of an identical order, we treat the amended judgment herein as if it had been entered in compliance with RAP 7.2.

must be stricken, and we agree. However, the State asserts that the trial court properly imposed the $100 DNA collection fee. We disagree.

"RCW 43.43.7541 requires the collection of a DNA sample from every adult or juvenile convicted of a felony." State v. Houck, 9 Wn. App. 2d 636, 651, 446 P.3d 646 (2019), review denied, 194 Wn.2d 1024 (2020). "A DNA collection fee is mandatory '*unless* the state has previously collected the offender's DNA as a result of a prior conviction.'" Houck, 9 Wn. App. 2d at 651 (quoting RCW 43.43.7541). If a defendant has a prior felony conviction, "the State must show that the defendant's DNA has not previously been collected." Houck, 9 Wn. App. at 651 n.4. If the record does not establish whether the State has previously collected a DNA sample from a defendant with a prior felony conviction but the DNA collection fee was imposed, the proper remedy is remand to determine whether such collection has occurred and for the trial court to strike the imposition of the collection fee if the State cannot demonstrate that the defendant's DNA has not previously been collected. See Houck, 9 Wn. App. 2d at 651 ("The trial court, on remand, shall strike the DNA collection fee unless the State demonstrates that Houck's DNA has not been collected.").

Britt has a prior felony conviction. The record does not show that the State established that it had not previously collected Britt's DNA. Thus, we remand to the trial court to determine whether the State has previously collected a DNA sample from Britt, to strike the DNA collection fee unless the State demonstrates that Britt's DNA was not previously collected, and to strike the $200 criminal filing fee.

Affirmed in part, reversed in part, and remanded.

Dwyer, J.

WE CONCUR:

Brennan, J    Andrus, A.C.J.